UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW KOSTRZEWSKI as Personal Representative of
THE ESTATE OF JONATHAN KOSTRZEWSKI

      Plaintiff,

                                        Case No 1:20-CV-

v.                                       Hon.


CITY OF WYOMING, Michigan
OFFICER BRANDON KNOWLING, Individually and in
his Official Capacity, OFFICER JACOB BYLSMA, Individually
and in his Official Capacity, OFFICER ERICH STAMAN, Individually
and in his Official Capacity, OFFICER AARON BROOKS, Individually
and in his Official Capacity, OFFICER JAKE TERPSTRA,
Individually and in his Official Capacity, OFFICER DEVIN
QUINTARD, Individually and in his Official Capacity.


      Defendants, Jointly and Severally

---

Eugenie B. Eardley (P48615)
Nicholas F. X. Gumina (P74203)
Eardley Law Offices, P.C.
Counsel for Plaintiff
8 East Bridge Street, Suite B
Rockford, MI 49341
(616) 874-2647

## **PARTIES**

1.    Plaintiff, Estate of Jonathan Kostrzewski, by and through its Personal Representative,

      Matthew Kostrzewski, appears on behalf of the deceased, Jonathan, a 21-year-old Kent

      County resident on August 2, 2018, then living in the City of Wyoming.

1

2. Plaintiff lived at 4260 Crooked Tree Drive, Apt. 11, with his girlfriend Shaianna Donley, as well as two other roommates.

3. Defendant, The City of Wyoming, is a municipality located in Kent County Michigan and its police department responded to multiple calls involving Plaintiff on August 2, 2018-August 3, 2018, at his home address.

4. OFFICER BRANDON KNOWLING was and is a Wyoming Police Department employee and officer who responded to these calls.

5. OFFICER JACOB BYLSMA was and is a Wyoming Police Department employee and officer who responded to these calls.

6. OFFICER ERICH STAMAN was and is a Wyoming Police Department employee and officer who responded to these calls.

7. OFFICER AARON BROOKS was and is a Wyoming Police Department employee and officer who responded to these calls.

8. OFFICER JAKE TERPSTRA was and is a Wyoming Police Department employee and officer who responded to these calls.

9. OFFICER DEVIN QUINTARD was and is a Wyoming Police Department employee and officer who responded to these calls.

**JURISDICTION**

10. Plaintiff alleges violations of the United States Constitution, including the Fourteenth, and Eighth Amendment of the Constitution, along with the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.

11. Therefore, this Honorable Court possesses subject matter jurisdiction under Title 28 of

the United States Code, Sections 1331 and 1343 and pendent jurisdiction over state claims.

## **FACTS**

12. On August 2, 2018, Plaintiff's girlfriend, Shaianna Donley, called the 911 emergency from her home, apartment No. 11, 4260 Crooked Tree Drive, in Wyoming, Michigan at 23:21:57 (11:21pm).

13. The "Call Type" was recorded as SUICIDETH and noted in the police report initially as a "domestic."

14. Donley called 911 because when she arrived home that evening, her boyfriend, decedent Plaintiff Jonathan Kostrzewski, was inebriated on alcohol and acting in a hostile, angry, and irrational manner.

15. Her roommates, Paige Corp and Jason Heksem, had called her earlier while she was out, telling her to come home, and warning her that Jonathan was drunk, depressed, angry, and causing a disturbance.

16. When she arrived home, they argued and his behavior escalated, and she told him he would have to sleep on the sofa.

17. He began throwing glass dishes and plates, and he broke a large glass table, cutting himself and physically lashing out at her and their roommates.

18. He threw broken glass at Donley's head.

19. Donley was frightened that she or her roommates would be injured, and/or that Jonathan would injure himself, as he often would threaten suicide when he was drunk or inebriated and depressed.

3

20. Donley believed that he was also abusing prescription Xanax.

21. When she called 911, Jonathan became even more angry, and grabbed his fishing pole and some bags and left the apartment on foot, fleeing the building.

22. Several police officers arrived shortly thereafter, Officer Jacob Bylsma, Erich Staman Brooks, and Terpstra per the police report. Donley recalls speaking to two male officers in the apartment.

23. Donley had to convince the officers to look at the broken glass, shattered table, blood stained walls, and broken furniture, and she told them that Jonathan had a history of depression, anxiety, and threats to kill himself when drinking or abusing drugs.   She also told them he was bleeding.

24. Donley told the officers that she believed that Jonathan would be heading to a familiar fishing spot along Kent Trails nearby, where he would often go when he was angry or upset.

25. The officers left and said they would look for him and to call them back if he tried to return acting belligerent.

26. Per the police report, officers Brooks, Staman, Terpstra, Bylsma then located Jonathan on a bridge on the old Kent Trail.

27. The report states that Jonathan was obviously drunk and stated that he was sad and depressed about arguing with his girlfriend, and he admitted to drinking.

28. Officer Bylsma wrote in his report that Jonathan denied ever wanting to hurt himself in the past, and also that Jonathan said that he did not want to hurt himself at that time.

29. Officer Bylsma also wrote in his report that "AMR" was called to the scene, or the

emergency medical staff in an ambulance that was staged nearby, who then came and assessed Jonathan and offered to take him to the hospital.

30.  The officer noted that Jonathan declined to go to the hospital and was given options to get other help for his depression and upset.

31.  The officer wrote that Jonathan said he would go back to his apartment and go to sleep.

32.  Jonathan's mother, Lori Kostrzewski, was on the cell phone while Jonathan was speaking to the officers at the bridge, and she noted him to be clearly depressed, upset and drunk, and that he admitted to being depressed.

33.  Lori Kostrewski also heard the Wyoming Police officers present make the decision to take Jonathan back to his apartment.

34.  Lori Kostrzewski also heard Jonathan ask to be taken to jail for the night at least two times, and heard Jonathan say his girlfriend would not let him back into the apartment.

35.  Lori Kostrzewski also heard Jonathan tell the police that he had nowhere to go and that his roommates would not let him back in the apartment.

36.  Donley and Corp saw out the apartment window that a police car dropped Jonathan off by the front door.

37.  Jonathan, still drunk and highly agitated, called Donley from the apartment door on his cell phone and buzzing the buzzer demanding to be let back in.

38.  Jonathan demanded a work bag and other items which Donley threw down the stairs.

39.  Paige Corp, one of their roommates, went down the stairs to talk to Jonathan and told him he could not stay in the apartment that night, and that he had to calm down.

5

Jonathan responded with profanity and aggression.

40. Donley and Corp gave Jonathan some clothes and blanket, and he tried to get back into the apartment; they told him no.

41. His mother lived in Grand Haven, Michigan, and had spoken to Donley about what had been happening during the night and knew of his suicidal tendencies and drunken behavior.

42. In the meantime, Jonathan's mother called Kent County 911 Dispatch at @0054 (first) and was then transferred or patched through to Wyoming Police Department at 1:03:05 to tell the Wyoming PD that her son had called her and was unstable and planning to kill himself.

43. She reported to the dispatcher that Jonathan said over the cell phone that he loved her, he was done, and bye.

44. A Wyoming Police officer called Lori Kostrewski back at @0124 checking the validity of her claim and told her that Jonathan was acting "fine" after their initial contact with him.

45. Officers told Donley and Lori that they thought Jonathan was in the apartment with Lori, when he was not; Lori was in Grand Haven.

46. AMR Unit 3 had been called and was reported to be on scene and staging by 1:05:18 for a psychiatric/suicide attempt.

47. They were cleared by the police while staging, and they reported being on scene by 01:13:01 as they could not locate Jonathan.   They were available by 01:36:25 but did not see him.

48. About thirty minutes after Jonathan had left the apartment with his hammock and other items, police officers Staman, Quintard, Knowling, Bylsma   (per the police report) returned to the apartment in response to the 911 call made by Lori Kostrzewski and made contact with Donley.

49. The police report indicates it was Officers Bylsma, Staman, Quintard, and Knowling who came to the apartment.

50. Donley recalls it being @1:13 am when 5 police officers came back to speak to her.

51. Donley was told that Jonathan's mother had called 911, and she said that Jonathan was feeling suicidal and wandering around outside the apartment building.

52. Donley told the officers that Jonathan would often threaten suicide when he was drunk and upset, but that he had not told her he would kill himself this time.

53. Donley told them that Jonathan was not in the apartment, nor was his mother Lori, as she was in Grand Haven, and offered to let them search the apartment.

54. They did not.

55. Donley told them of various spots in the nearby woods and a dog park where Jonathan would sometime go when he was in angry drunken fit and sleep in a hammock after they had had a fight.

56. At about 1:41 a.m., a police officer called Donley and asked if she had a car that Jonathan had access to, and whether he could drive it, and if she had her keys.   She told them where her car was parked in the carport, and that she had the keys and that Jonathan could not access it.

57. Donley could see her own car from her window, and that the police car was parked in

the same carport.

58.   At approximately 2:10 a.m., an officer called Donley and told her Jonathan was not at the car, and asked for his cell phone number, and told her they would "ping" his cell phone.

59.   At about 2:31 a.m., two police officers entered the apartment hallway and told Donley that Jonathan's cell phone had pinged in the building.   She told them that could not be true.

60.   The officers left out of the back way of the apartment building, and Donley asked them if they had checked in the woods by the dog park, leading to Kent Trails, because that was a place Jonathan had gone to hang his hammock before.

61.   The officers told Donley that they had a 100-200 foot radius to go off with the pinging.   The officer left the apartment.

62.   The officer reported that they continued to search, and that at 0245 hours, Officer Byslma reported finding Jonathan's dead body about 300 feet behind the leasing office in the woods, the address of which is 4277 Stonebridge Dr, SW.

63.   His body was hanging from a tree with a nylon strap around his neck.

64.   AMR was called, and CPR was applied without success, and he was pronounced dead at the scene by Metro ER doctor Bradley at 0322.

65.   The officers had the Grand Haven police contact Jonathan's mother and father, Lori & Matthew Kostrzewski, in person to inform her that he was dead in the early hours of the morning.

66.   Officers Bylsma and Staman went to Donley's apartment at approximately 4:54 a.m.

and told Donley that Jonathan had been found dead by hanging, and gave her his blood spattered clothing and his bag, which was missing some items, as well as his shoes covered with dog feces, and then abruptly left, telling her "to have a good night."

67. The body was released to the medical examiner who performed an autopsy, the cause of death was listed as asphyxia by hanging.

68. The family was not allowed to view his body.

69. After the incident occurred, days later, a female dispatcher from AMR told Johnathan's father, Matthew Kostrzewski, that, due to HIPAA, he could only inform him that AMR had no contact with Jonathan that night until he was found in cardiac arrest.   The dispatcher gave Mathew a supervisor's phone number to call.

70. Scott, a supervisor at AMR, called Matthew Kostrzewski on approximately August 16, 2018, and left him a voice mail that AMR was called off by the officers (cancelled), saying that they were not needed.   The time noted on the AMR record of AMR being "at scene" was 00:06:35, and available was 00:11:37, and the narrative reads "cancel."

71. On approximately August 17, 2018, Matthew Kostrzewski, spoke with an AMR representative named Tim by phone, and asked several times about why there was no indication in the AMR electronic record that any EMT or AMR employee had actually seen and assessed Jonathan that night, as was written in the Wyoming Police Department report.   Tim told him that AMR had only responded with two calls.

72. Matthew Kostrzewski spoke with Tim again in the next few days and Tim said that no AMR representative had contact with Jonathan until the body was found after 1:00

a.m., and they were again called, and they attempted resuscitation.

73. On another day, Matthew Kostrzewski spoke to Tim at AMR who explained that it looked like there were three calls, but the first one was cancelled by the police.

74. In the Police Report, the officers wrote that they gave Jonathan a ride back to his apartment and cleared the scene at 0025.

75. Matthew Kostrzewski, the deceased's father, called the City of Wyoming Public Safety office, Detective Robinson asking about the investigation, as well as left a message on August 16, 2018 or August 17, 2018.

76. In a phone conversation on approximately August 16, 2018 with Detective Robinson, he told Matthew Kostrzewski that he would "back" his officers' decisions.

77. Lori Kostrzewski, the deceased's mother, also called the City as well, and was able to contact Detective Maloney of the City of Wyoming Department of Public Safety on August 16, 2018.

78. Both parents spoke to Detective Maloney by phone that day, and he read from the police report which stated that AMR ambulance staff assessed Jonathan and determined he did not want to go, nor need to go to the hospital.

79. Matthew Kostrzewski spoke to AMR officials about the matter by phone on August 16, and received a voicemail on August 16, 2018 from Scott at AMR saying that no one at AMR saw his son that night before he was found dead, and told him to contact the City of Wyoming to speak to the police about why their report said that someone from AMR had assessed him earlier in the evening.

80. On August 21, 2018, Matthew and Lori Kostrzewski met with Detectives Maloney

10

and Robinson, and questioned them about many things their officers did and did not
do and how they had responded to the call.

81.   Matthew Kostrzewski went to the AMR office in person to pick up the ambulance
reports on September 4, 2018, and was given only a record from the third call made to
them that night, when they tried to revive him after her was found in cardiac arrest
hanging from the tree.

82.   They asked why the police report said that medical attention was given and Jonathan
was assessed, when AMR says it was not.

83.   The Detectives were very defensive of their officers' actions and said they stood by
the report, which said that an unnamed person from AMR did assess Jonathan, and
that he did not want to go to the hospital and denied suicidality.

84.   The Detectives appeared very offended that the family was questioning the propriety
of their officer's actions and became angry and the meeting was not productive.

85.   Shortly after this meeting, Matthew Kostrzewski again spoke by phone with AMR,
this time a person named Tim.   He again confirmed AMR ambulances responded two
times to the emergency calls about Jonathan that night, a stand-by that was cancelled
by the police officers as John was not found, and the second was a stand-by by the
ambulance crew with no patient contact.   The last was when the ambulance was
called when his body was found and life support efforts were made.

86.   Later, after a FOIA request was made on October 1, 2018, and a letter of
representation from Plaintiffs' counsel was sent to the City of Wyoming Office of
Public Safety, the City Attorney asked for an extension to respond to the FOIA.

87. The City Attorney then produced materials on October 18, 2018 with a cover letter, that included AMR ambulance records with an "addendum" email dated Sunday, October 7, 2018, a Sunday, (which was 6 days after the initial letter of representation by counsel went to the City of Wyoming Office of Public Safety) from "Quist, Amanda" to a Vandermeer, Dustin. **(Attached as Exhibit 1)**

88. The addendum was "signed" by an Amanda Stewart, ***dated 10-7-2018,*** purported to be from an employee of AMR claiming that she had actually assessed Jonathan that night before his death, which she sent to a Wyoming Police Department Officer Dustin VanderMeer.

89. The cover letter from the City Attorney threatened Plaintiff's counsel should she engage in any "further mischaracterization" of the incident **(Attached as Exhibit 2)** because her October 1 letter outlined that the AMR records then obtained showed that there was not medical intervention by AMR employees before his death, among other criticisms of the handling of the incident.

## COUNT ONE: VIOLATION OF DUE PROCESS, 42 U.S.C. § 1983, -STATE CREATED DANGER

90. Plaintiff hereby restates all above paragraphs 1-89, as if stated herein in full.

91. The action and omission of acts by the Defendants under 42 U.S.C. § 1983 was under the color of law, was unreasonable and performed knowingly, deliberately, intentionally, maliciously with gross negligence, callousness and reckless indifference to Plaintiff's well-being and life and in disregard of Plaintiff's safety, with wanton and willful intent to create, through affirmative acts, a perilous situation that created a danger that rendered Plaintiff Decedent Kostrzewski more vulnerable to mortal danger

and increased the risk of his committing suicide, a private act of violence, as he was left alone outside at night, unable to care for himself, without shelter or proper medical assessment and medical assistance when he was obviously severely intoxicated by alcohol and drugs, violent, assaultive, and admittedly depressed and had expressed suicidal threats and intention, as well as desire to be taken somewhere safe for the night.

92.     The actions and omissions of the Defendants were affirmative acts that increased the risk that Plaintiff Decedent Kostrzewski would successfully end his life, and the Defendants were well aware of that risk and, despite being aware of this risk, they acted with deliberate indifference and subjective recklessness toward the decedent Jonathan Kostrzewski's safety and health, and knowingly and unreasonably opted for a course of conduct that entailed a substantially greater total risk than the available alternatives.

93.     These Defendants were aware of these facts from which the inference could be drawn that a substantial risk of serious harm existed, and they drew those inferences.

94.     In addition, the Defendants' failure to properly train, supervise, develop and implement policies providing its officers with adequate instruction in how to assess and protect inebriated, assaultive and mentally incapacitated members of the public who are at a high risk for suicide, disturbing the peace, and unable to care for themselves led to the danger, Plaintiff's death by suicide and suffering, by reason of which the Plaintiff's Estate is entitled to compensatory and punitive damages.

95.     The conduct of Defendants City of Wyoming, OFFICER KNOWLING, OFFICER

BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually and as agents of the City of Wyoming, deprived Plaintiff's Decedent Kostrzewski of his clearly established rights, privileges and immunities in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, and of 42 U.S.C. § 1983.

96.   The conduct of the Defendants, City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually and as agents of the City of Wyoming, exhibited deliberate indifference by intentional acts, gross negligence, and/or engaging in omissions to breach Plaintiff decedent's safety and causing a Constitutional deprivation of his rights to wit:

   a.   Failure to properly provide proper assessment and medical treatment for an obviously depressed, inebriated, and assaultive person who was clearly not mentally and emotionally competent to care for himself by either having him assessed in the field by EMS for transport, and/or taking him to an Emergency Room to be assessed and more likely than not admitted, or involuntarily committed in a safe environment where he would unable to end his life;

   b.   Suggesting and then enabling the decedent to simply "sleep off" his drunken and depressed state by taking him back to the apartment door/curbside in their police car, to the home he shared with his girlfriend and roommates but had been told he could not return due to the fear of the occupants from his drunken, assaultive, violent behavior earlier in the evening, all facts of which the Defendants were

well aware;

c.   Refusing to take the decedent to a safe place as he requested, to enable him to arouse from his drunken, depressed and violent state after the passage of time and medical assessment without increasing the risk his behaviors would escalate and he would be able to kill himself;

d.   A reasonable officer in the Defendant(s) position at the time of this incident prior to decedent's death would have known in the light of existing law, that the unlawfulness of ignoring the risk of increased harm by letting the decedent stay outside alone in the middle of the night while depressed, drunk and intoxicated with nowhere to go was apparent, as were the safer options of taking him into custody and transporting him to the ER or jail to have him medically assessed and made safe,

e.   The Defendants were aware that there was a special danger to the decedent where the Defendants' actions placed the decedent at a specifically greater risk than the public at large should he be left alone in the dark untreated, assessed or kept safe from harm,

f.   The Defendants should have known their actions and choices specifically endangered the decedent, a depressed, angry, drunken person with reported suicidal threats.

g.   Any and all other breaches as they become known through discovery.

97.   As a direct and proximate cause of the afore-mentioned conduct and omissions of all named Defendants City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA,

15

OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER

QUINTARD, individually and as agents of the City of Wyoming, Plaintiff's decedent,

Jonathan Kostrzewski suffered pain, anguish, and ultimately death by hanging.

WHEREFORE, the Plaintiff requests the following relief:

    a) Reasonable medical, funeral and burial expenses;

    b) Conscious pain and suffering between the time of his injury and death;

    c) Loss of financial support;

    d) Loss of Services;

    e) Loss of gifts and other valuable gratuities;

    f) Loss of comfort, society and companionship;

    g) Compensatory and punitive damages; and

98. WHEREFORE, Plaintiff Matthew Kostrzewski, Personal Representative of the Estate of Jonathan Kostrzewski, deceased, respectfully requests this Honorable Court enter Judgment in their favor and against Defendants jointly and severally in an amount in excess of $75,000, pursuant to 42 U.S.C. § 1983, exclusive of costs, interests and attorneys' fees, and punitive damages, and any and all other damages recoverable under 42 U.S.C.§ 1983 including attorneys' fees.

## COUNT TWO: VIOLATION OF DUE PROCESS, 42 U.S.C. § 1983, MONELL

99. Plaintiff hereby restates all above paragraphs 1-98, as if stated herein in full.

100. Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendment to the United States Constitution, Defendant City of Wyoming, through its Police Department owed Plaintiff Defendant certain duties to supervise, monitor and train its

officers to be aware of the proper protocols to use when addressing a drunken and depressed subject after a domestic violence call so as to avoid the subject being left to act out on suicidal thoughts.

101.    Defendant City of Wyoming, in its representative and official capacity, has maintained a custom and policy of failing to train officers properly about suicide risk of subjects in the field, and as such, is not protected by governmental immunity when following such a custom and policy deprives individuals of their constitutional rights.   *Monell v N.Y. City Det' of Soc. Serv.,* 436 658, 690-91, 692 (1978)

102.    Defendant City of Wyoming was aware of the custom and practice of officers leaving drunk, depressed and suicidal subjects to be released without medical care despite their apparent lack of capacity similar to the actions of the Defendant officers in this case.

103.    Defendant owed Plaintiff Decedent the following duties and obligations:

    a)  To use due care and caution;

    b)  To adequately and properly promulgate guidelines and policies that comply with the requirements of 42 U.S.C. 1983 regarding the handling of drunken, depressed, violent and potentially suicidal subjects, especially those who are mental and emotionally unstable, particularly those with a history of mental illness.

    c)  To adequately and properly train and supervise its officers on the proper method of supervising such subjects in the field similar to Plaintiff Decedent, and providing for their health and safety and preventing

suicide.

    d)  To avoid hiring and selecting individuals who it knows or should know are incapable of performing their duties and responsibilities or who are likely to misuse their power.

    e)  For its supervisors to not ratify unconstitutional conduct by its officers by failing to investigate such incidents when complaints are made, and failing to discipline them appropriately.

104.    The action and omission of acts, and custom and policy by the Defendants under 42 U.S.C. § 1983 outlined above were done with deliberation indifference to Plaintiff's well-being (and other such subjects) and life and in disregard of Plaintiff's safety, with wanton and willful intent to create, through affirmative acts, a perilous situation that created a danger that rendered Plaintiff Decedent Kostrzewski more vulnerable to mortal danger and increased the risk of his committing suicide, a private act of violence, as he was left alone outside at night, unable to care for himself, without shelter or proper medical assessment and medical assistance when he was obviously severely intoxicated by alcohol and drugs, violent, assaultive, and admittedly depressed and had expressed suicidal threats and intention, as well as desire to be taken somewhere safe for the night.

105.    The actions and omissions and policy of the Defendant was a deliberate choice from various alternatives by the officials responsible for establishing final policy with the subject matter in question, to wit, preventing suicide by such subjects.

106.    The custom and policy increased the risk that Plaintiff Decedent Kostrzewski would

successfully end his life, and the Defendants were well aware of that risk and, despite being aware of this risk, they acted with deliberate indifference and subjective recklessness toward the decedent Jonathan Kostrzewski's safety and health, and knowingly and unreasonably opted for a course of conduct that entailed a substantially greater total risk than the available alternatives.

107.   These Defendant were aware of these facts from which the inference could be drawn that a substantial risk of serious harm existed, and they drew those inferences.

108.   In addition, the Defendants' failure to properly train, supervise, develop and implement policies providing its officers with adequate instruction in how to assess and protect inebriated, assaultive and mentally incapacitated members of the public who are at a high risk for suicide, disturbing the peace, and unable to care for themselves led to the danger, Plaintiff's death by suicide and suffering, by reason of which the Plaintiff's Estate is entitled to compensatory and punitive damages.

109.   The conduct of Defendants City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually and as agents of the City of Wyoming, deprived Plaintiff's Decedent Kostrzewski of his clearly established rights, privileges and immunities in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, and of 42 U.S.C. § 1983.

110.   The conduct of the Defendants, City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually and as agents of the City of

19

Wyoming, exhibited deliberate indifference by intentional acts, gross negligence, and/or engaging in omissions to breach Plaintiff decedent's safety and causing a Constitutional deprivation of his rights to wit:

a. Failure to properly provide proper assessment and medical treatment for an obviously depressed, inebriated, and assaultive person who was clearly not mentally and emotionally competent to care for himself by either having him assessed in the field by EMS for transport, and/or taking him to an Emergency Room to be assessed and more likely than not admitted, or involuntarily committed in a safe environment where he would unable to end his life;

b. Suggesting and then enabling the decedent to simply "sleep off" his drunken and depressed state by taking him back to the apartment door/curbside in their police car, to the home he shared with his girlfriend and roommates but had been told he could not return due to the fear of the occupants from his drunken, assaultive, violent behavior earlier in the evening, all facts of which the Defendants were well aware;

c. Refusing to take the decedent to a safe place as he requested, to enable him to arouse from his drunken, depressed and violent state after the passage of time and medical assessment without increasing the risk his behaviors would escalate and he would be able to kill himself;

d. A reasonable officer in the Defendant(s) position at the time of this incident prior to decedent's death would have known in the light of existing law, that the unlawfulness of ignoring the risk of increased harm by letting the decedent stay

outside alone in the middle of the night while depressed, drunk and intoxicated with nowhere to go was apparent, as were the safer options of taking him into custody and transporting him to the ER or jail to have him medically assessed and made safe,

    e.   The Defendants were aware that there was a special danger to the decedent where the Defendants' actions placed the decedent at a specifically greater risk than the public at large should he be left alone in the dark untreated, assessed or kept safe from harm,

    f.   The Defendants should have known their actions and choices specifically endangered the decedent, a depressed, angry, drunken person with reported suicidal threats.

    g.   Any and all other breaches as they become known through discovery.

111.   As a direct and proximate cause of the afore-mentioned conduct and omissions of all named Defendants City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually and as agents of the City of Wyoming, Plaintiff's decedent, Jonathan Kostrzewski suffered pain, anguish, and ultimately death by hanging.

WHEREFORE, the Plaintiff requests the following relief:

    a)  Reasonable medical, funeral and burial expenses;

    b)  Conscious pain and suffering between the time of his injury and death;

    c)  Loss of financial support;

    d)  Loss of Services;

    e)  Loss of gifts and other valuable gratuities;

    f)  Loss of comfort, society and companionship;

    g)  Compensatory and punitive damages; and

112.   WHEREFORE, Plaintiff Matthew Kostrzewski, Personal Representative of the Estate of Jonathan Kostrzewski, deceased, respectfully requests this Honorable Court enter Judgment in their favor and against Defendants jointly and severally in an amount in excess of $75,000, pursuant to 42 U.S.C. § 1983, exclusive of costs, interests and attorneys' fees, and punitive damages, and any and all other damages recoverable under U.S.C.§ 1983 including attorneys' fees.

## COUNT THREE: GROSS NEGLIGENCE

113.   Plaintiff hereby restates each and every allegation contained in paragraphs 1 through 112 if restated herein in full.

114.   The acts and conduct of Defendants alleged in the above cause of action when considered under the laws of State of Michigan, constitute gross negligence and the Defendants and the Defendants are not entitled to the immunity of M.C.L. 600.1407(2) because they were grossly negligent.

115.   That the conduct of the Defendants City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, exhibited a deliberate indifference by intentional acts and/or omissions amounting to gross negligence.

116.   At all relevant times, Defendants were grossly negligent in one or more of the following ways:

a. Failure to properly provide proper assessment and medical treatment for an obviously depressed, inebriated and assaultive person who was clearly not mentally competent to care for himself by either having him assessed in the field by EMS, and/or taking him to an Emergency Room to be assessed and more likely than not admitted, or involuntarily committed in a safe environment where he would unable to end his life;

b. Suggesting and then enabling the decedent to simply "sleep off" his drunken and depressed state by taking him back to the apartment door/curbside in their police car, to the home he shared with his girlfriend and roommates but had been told he could not return due to the fear of the occupants from his drunken, assaultive, violent behavior earlier in the evening, all facts of which the Defendants were well aware;

c. Refusing to take the decedent to a "safe" place as he requested, to enable him to arouse from his drunken, depressed and violent state after the passage of time and medical assessment without increasing the risk his behaviors would escalate and he would be able to kill himself;

d. A reasonable officer in the Defendant(s) position at the time of this incident prior to decedent's death would have known that in the light of existing law, that the unlawfulness of ignoring the risk of increased harm by letting the decedent stay outside alone in the middle of the night while depressed, drunk and intoxicated with nowhere to go was apparent, as were the safer options of taking him into custody and transporting him to the ER or jail to have him medically assessed and

23

made safe,

e.   The Defendants were aware that there was a special danger to the decedent where the Defendants' actions placed the decedent at a specifically greater risk than the the public at large should he be left alone in the dark untreated, assessed, or kept safe from harm,

f.   The Defendants should have known their actions and choices specifically endangered the decedent, a depressed, angry, drunken person with reported suicidal threats.

g.   Any and all other breaches as they become known through discovery.

117.   That a direct and proximate result of the aforementioned conduct and omissions of Defendants, Defendants City of Wyoming, OFFICER KNOWLING, OFFICER BYLSMA, OFFICER STAMAN, OFFICER BROOKS, OFFICER TERPSTRA, OFFICER QUINTARD, individually, and/or agents of the City of Wyoming, Plaintiff's decedent, Jonathan Kostrzewski suffered pain, anguish, and ultimately death by hanging.

WHEREFORE, Plaintiff Matthew Kostrzewski, Personal Representative of the Estate of Jonathan Kostrzewski, deceased, respectfully requests this Honorable Court enter Judgment in their favor and against Defendants jointly and severally in an amount in excess of $75,000, pursuant to 42 U.S.C. § 1983, exclusive of costs, interests and attorneys' fees, and punitive damages.

Respectfully Submitted,

EARDLEY LAW OFFICES, P.C.
Counsel for Plaintiff

July 24, 2020

*/s/Eugenie B. Eardley*
Eugenie B. Eardley (P48615)
Nicholas F.X. Gumina (P74203)
8 East Bridge St, Suite B
Rockford, MI   49341
(616) 874-2647

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW KOSTRZEWSKI as Personal Representative of
THE ESTATE OF JONATHAN KOSTRZEWSKI

      Plaintiff,

                                   Case No 1:20-CV-

v.                                   Hon.

CITY OF WYOMING, Michigan
OFFICER BRANDON KNOWLING, Individually and in
His Official Capacity, OFFICER JACOB BYLSMA, Individually
and in his Official Capacity. OFFICER ERICH STAMAN, Individually
and in His Official Capacity, OFFICER AARON BROOKS, Individually
and in his Official Capacity, OFFICER JAKE TERPSTRA,
Individually and in his Official Capacity, OFFICER DEVIN
QUINTARD, Individually and in his Official Capacity.

      Defendants, Jointly and Severally

_____

Eugenie B. Eardley (P48615)
Nicholas F. X. Gumina (P74203)
Eardley Law Offices, P.C.
Counsel for Plaintiff
8 East Bridge Street, Suite B
Rockford, MI 49341
(616) 874-2647

## JURY DEMAND

      Comes Now the Plaintiff, by and through its attorneys, Eardley Law Offices, P.C., and hereby requests a trial by jury on all counts as outlined above.

26

Respectfully Submitted,
EARDLEY LAW OFFICES, P.C.
Counsel for Plaintiff

July 24, 2020

*/s/EugenieB.Eardley*
Eugenie B. Eardley (P48615)
Nicholas F.X. Gumina (P74203)
8 East Bridge St, Suite B
Rockford, MI   49341
(616) 874-2647

27